UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCWYANA SMITH, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:12-CV-3083 |
| § | |
| HOUSTON INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

Pending before the Court in this employment-discrimination action is Defendant Houston Independent School District's ("HISD") Motion for Summary Judgment (Doc. 16) on all claims brought by Plaintiff Scwyana Smith ("Smith"). Upon review and consideration of the motion, the response (Doc. 19), the reply (Doc. 20), the record, and the applicable law, the Court concludes that the motion should be granted.

**I.   Background**

HISD hired Smith in 2004 as a "Document Control Specialist" in Procurement Services, a department within the central administration of HISD. Offer Letter, Doc. 16, Ex. 1 at 2. In 2009, Smith's position was reclassified as "General Clerk III," a title she held for the remainder of her employment with HISD. Reclassification Letter, Doc. 16, Ex. 7. Smith was at all times an at-will employee. Aff. of Chalita Cyprian, Doc. 16, Ex. 39 ¶ 4; Aff. of Selika Robinson, Doc. 16, Ex. 43 ¶ 3. In response to a statewide budget shortfall, HISD implemented a district-wide Reduction in Force ("RIF") during the 2011–2012 school year. Doc. 16, Ex. 43 ¶ 5. On February 10, 2011, the General Manager of Procurement Services, Stephen Pottinger

("Pottinger"), notified all Procurement Services employees of the impending RIF.  *See* RIF Script, Doc. 16, Ex. 11; RIF Memo, Doc. 16, Ex. 12.

On May 6, 2011, Pottinger gave written notice to each of the four General Clerk IIIs, including Smith, that their positions were subject to the RIF and that two General Clerk III positions would be eliminated.  *See* Doc. 16, Ex. 12.  Pottinger, acting within the discretion afforded to him by the applicable HISD Board Policy, developed a procedure for effectuating the RIF in his department whereby he interviewed each of the four clerks for the two available positions.  *See* Interview Script, Doc. 16, Ex. 13; Interview Questions, Doc. 16, Ex. 14.  In each interview Pottinger asked each candidate four questions regarding her individual efforts and contributions to the Procurement Services Department.  *See* Doc. 16, Ex. 13; Doc. 16, Ex. 14.[1]  Each question was worth 25 points, for a total of 100 points.  *See* Doc. 16, Ex. 13; Doc. 16, Ex. 14.  On May 9, 2011, Pottinger and Guy Mazzola, Smith's direct supervisor, interviewed Smith.  *See* RIF Memo, Doc. 16, Ex. 12; Smith Dep., Doc. 16, Ex. 32 at 39:15–24.  During her interview, Smith "failed to provide substantive or meaningful answers to the questions asked." Doc. 16 at 7.  She took credit for suggestions that she did not actually make and reiterated ideas that had previously been discussed and rejected as "impractical or infeasible."  *See* Mazzola Depo. Doc. 16, Ex. 32 at 64–67.  After the interviews, Mazzola and Pottinger assigned each interviewee a letter grade resulting in the grade distribution of one "B", one "C", and two "Ds." with Smith receiving one of the "Ds".  Level I Grievance Recommendation, Doc. 16, Ex. 30.  On May 11, 2011, Smith was terminated.  *See* Termination Script, Doc. 16, Ex. 16.

---

[1] Pottinger asked the following questions of each interviewee: (1) provide examples of any suggestions you personally made in the past year to improve any business process; (2) provide examples of any suggestions you personally made in the past year to reduce District costs; (3) provide examples of tasks or projects you have personally taken on in the past year—above and beyond your current job description; and (4) provide examples of any value added services you have personally provided to schools in the past year. Doc. 16, Ex. 14

Smith challenged her termination in accordance with the HISD grievance process outlined by the applicable HISD Board Policy. Aff. of Veronica Mabasa, Doc. 16, Ex. 42 ¶ 7; *see also* Termination Grievance, Doc. 16, Ex. 29; Level I Recommendation, Doc. 16, Ex. 30; Level II Grievance, Doc. 16, Ex. 31; Level II Hr'g Tr., Doc. 16, Ex. 32; Level II Recommendation, Doc. 16, Ex. 33; Notification of Level III Decision, Doc. 16, Ex. 34. Smith argued that "the selection process did not comport with HISD's lay-off procedures, it was arbitrary and capricious, and it constituted a denial of [her] rights to equal protection under the laws and due process." Doc. 16, Ex. 29. At the first level of the grievance protocol, Pottinger concluded that Smith's termination was consistent with Board Policy, was fair and impartial, was neither arbitrary nor capricious, and did not deny Smith her rights to equal protection or due process under the law. Doc. 16, Ex. 30. Smith appealed the Level I decision by requesting a Level II hearing. Doc. 16, Ex. 31. On November 18, 2011, a Level II Grievance hearing took place before an independent hearing examiner, who concluded that the District followed its policies in terminating Smith and denied her request to rescind her termination. Doc. 16, Ex. 32; Doc. 16, Ex. 33 at 8–9. Smith appealed the Level II Decision to HISD's Board and on August 23, 2012, the Board upheld the Level II Decision. Doc. 16, Ex. 34.

Smith timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division (Charge No. 460-2011-02381), checking the boxes on the charge forms for "race," "religion," and "retaliation." EEOC Charge, Doc. 16, Ex. 25. In stating the particulars of her discrimination charge, Smith wrote: "Guy Mazzola, Procurement Manager, negatively referred to my major, Theology, in my Bachelor of Science degree, and it hindered my being selected for training. I believe that I have been discriminated against because of my race, black, and religion, Christian,

and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*. With regard to her retaliation charge, Smith wrote: "I believed that I was laid off in retaliation for complaining about having to do higher level duties without the proper compensation and title." *Id.*

Smith received notice of her right to sue on July 29, 2012, and timely filed her complaint asserting claims for sex and race discrimination under Title VII and claims for race, and religious discrimination and retaliation under Texas Labor Code § 21.051. Pl.'s Compl., Doc. 1. Smith's complaint contains even fewer details regarding the basis for her claims than her EEOC Charge. She does, however, add a disparate impact claim and a reference to discrimination based on age. She states that HISD's RIF had a disproportionate impact on "African American females…over the age of 40." *Id.* ¶ 14.[2]

On November 14, 2012, HISD moved to dismiss Smith's gender and age claims for failure to exhaust her administrative remedies. Doc. 11 at 2. The Court granted that motion on July 22, 2013. HISD now moves for summary judgment on Smith's remaining claims. Doc. 16.

## II. Legal Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if, according to the substantive law governing the claims, it is determinative of an element essential to the outcome of the case.

---

[2] Smith also complains that she was "denied to train [sic] on the position to be a buyer." *Id.* ¶ 12. It is unclear how, if at all, this allegation is related to her discrimination claims. Regardless, "the Fifth Circuit has consistently refused to find that a denial of training can constitute an adverse employment action" under Title VII. *Jones v. BP Amoco Chem. Co.*, Civ. No. H-10-1399, 2012 WL 1424986 (S.D. Tex. Apr. 23, 2012) *aff'd*, 516 F. App'x 330 (5th Cir. 2013) (citing *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir. 2005)). Accordingly, any claim related to this allegation is dismissed.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.  Therefore, the court must not make determinations of credibility or weight, and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  Conclusory allegations unsupported by evidence will not preclude summary judgment. *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999).

**III.  Discussion**

In this case, the substantive law governing Smith's claims is Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA").  Both Title VII and the TCHRA make it unlawful for an employer to discharge or discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.  In the Fifth Circuit, employment discrimination claims under the TCHRA or Title VII that are based on circumstantial evidence are analyzed using the same three-step burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005); *Sandstad*, 309 F.3d at 896.  Therefore, the Court will proceed to analyze all of Smith's claims under the *McDonnell Douglas* framework whether she brings them under Title VII or the TCHRA.

Under this analysis, the plaintiff must establish a *prima facie* case according to the specific requirements of her particular claim.  *McDonnell Douglas*, 411 U.S. at 802.  If successful, the plaintiff creates a rebuttable presumption of unlawful activity.  *Id.*  In the second step, the defendant bears a burden of production, which it can meet only by "articulat[ing] a legitimate, nondiscriminatory reason" for its activity.  *Id.*  If the defendant meets its burden, then, in the third step, the plaintiff "must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Id.* at 804.  The ultimate burden of persuasion rests with the plaintiff.  *Reeves*, 530 U.S. at 142–42; *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).

> A.   *Smith's Race and Religious Discrimination Claims*

The Fifth Circuit utilizes a modified version of the *McDonnell Douglas* test in the context of discrimination cases involving a general reduction in force ("RIF") since an RIF "is itself a

legitimate, nondiscriminatory reason for discharge." *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (in Title VII action); *see also Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (in TCHRA action). Therefore, in order to present at prima facie case in an RIF case, a plaintiff must demonstrate (1) that she is within a protected group; (2) that she was adversely affected by the employer's decision; (3) that she was qualified to assume another position; and (4) others who were not members of the protected class remained in similar positions. *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 668 (S.D. Tex. 2001) (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Meinecke v. H & B Block*, 66 F.3d 77, 83 (5th Cir. 1995); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990)). The plaintiff has to make only a minimal showing to establish such a prima facie case.

HISD argues that Smith cannot make out a prima facie case for race or religious discrimination because "she cannot show that she was qualified to assume another available position or that individuals outside of her protected class remained in similar positions after she was terminated." Doc. 16 at 14. With regard to the third prong of the prima facie case, HISD points out that in Smith's deposition, she was asked whether she had knowledge of any open positions in other departments that were not offered to her. She responded: "I don't know. I can't answer your question." Doc. 16, Ex. 32 at 303:3–9. As such, Smith has not shown that there was any other available position within her department, let alone a position that she was qualified to assume. As to the fourth prong of the prima facie case, HISD contends Smith cannot show that any individuals outside of her protected class remained in similar positions to the one from which she was terminated. Prior to the RIF, all four employees who held the General Clerk III position were African American and at least two of them were Christian. After the RIF, both of the remaining General Clerk IIIs were African American, and at least one was Christian. *See*

Procurement Servs. Dep't Org. Chart, Doc. 16, Ex. 22; Aff. of Ethyl Kujimiyo, Doc. 16, Ex. 38; Aff. of Chalita Cyprian, Doc. 16, Ex. 39, Aff. of Everlynn Goff, Doc. 16, Ex. 40. Furthermore, in her deposition Smith admitted that she did not know the religious affiliations of others in her department and could not say whether she was treated differently than other similarly-situated employees of a different religion. Doc. 16, Ex. 37 at 248:18–21. As such, Smith has not shown that other individuals outside of her protected class remained in the General Clerk III position.

Smith's reply fails to raise a material issue of fact on either of these points. *See* Doc. 20. She does not address the arguments or evidence offered by HISD. She simply repeats the allegations from her complaint and also objects to the admission of affidavits from employees who are still employed by HISD as self-serving and conclusory. Doc. 20 ¶ 10. Smith's objections to the employees' affidavit are overruled. In the Fifth Circuit, courts do not define "interested witness" so broadly as to require the exclusion of all "testimony from a company's agents regarding the company's reasons for discharging an employee…[T]o so hold would foreclose the possibility of summary judgment for employers, who almost invariably must rely on testimony of their agent to explain why the disputed action was taken." *Sandstad*, 309 F.3d at 898 (5th Cir. 2002).

The Court finds that Smith cannot show that she was qualified to assume another position at HISD or that others outside her protected classes remained in similar positions. She, therefore, fails to state a prima facie case and HISD is entitled to summary judgment on Smith's discrimination claims.

### B. *Smith's Retaliation Claim*

HISD argues that it is entitled to summary judgment on Smith's retaliation claim because "she cannot show that she engaged in any protected activity prior to her termination, or that there

is a causal nexus between any alleged protected activity and Plaintiff's termination."  Doc. 16 at 36.  To plead a prima facie case of retaliation, a plaintiff must show: (1) she engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Brazoria Cnty., Tex. v. EEOC*, 391 F.3d 385, 692 (5th Cir. 2004); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a); *see also Glorioso v. Miss. Dep't of Corr.*, 193 F.3d 517, No. 99-60147, 1999 WL 706173, at *3 (5th Cir. Aug. 20, 1999) (citing *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)).  "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).

Smith's only allegation to support her retaliation claim is that she was laid off "for complaining about having to do higher level duties without the proper compensation and title."  Doc. 16, Ex. 25.  Complaining generally about one's job duties is not a protected activity under Title VII.  *See, e.g.*, *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (finding no protected activity where plaintiff's complaints to her employer did not allege that she was discriminated against because of her race or gender); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (finding that plaintiff's grievance was not a protected activity because it did not protest any unlawful employment action under Title VII).  Neither Smith's complaint nor her EEOC Charge alleges that she was retaliated against for

engaging in a protected activity under Title VII. "[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected employment activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). Furthermore, even if Smith could demonstrate that she engaged in a protected activity under Title VII, she cannot show a causal connection between her termination and any actual or alleged protected activity since the record clearly shows that Smith was terminated as part of an equitably-implemented District-wide RIF. Thus, the Court finds that Smith cannot establish a prima facie case for retaliation and her claim is dismissed.

   C. *Smith's Disparate Impact Claim*

HISD argues that it is entitled to summary judgment on Smith's claim that HISD's RIF had a disparate impact on "African American females…over the age of 40" because Smith failed to exhaust this claim by including it in her administrative charge prior to bringing suit and because she fails to establish a prima facie case for disparate impact. Doc. 16 at 42–44.

An employee asserting a claim against her employer under Title VII must exhaust administrative remedies before commencing an action in federal court. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.), *cert denied*, 549 U.S. 888 (2006). It is well-established that "that 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)). Courts are instructed, however, to read a plaintiff's administrative charge "broadly, in a fact-specific inquiry into what EEOC investigations can reasonably be expected to trigger." *Pacheco*, 448 F.3d at 788. In *Pacheco v. Mineta*, the Fifth Circuit explained:

> One the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an

>EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance…[A]llowing a federal complaint to proceed despite its loose "fit" with the administrative charge and investigation is precluded it if would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

*Id.* (citing *Sanchez*, 431 F.2d at 463).

Smith's EEOC Charge does not allege any facts from which a disparate impact claim could possibly be inferred. In fact, her charge does not reference any HISD employees other than herself. It is not reasonable to presume that an EEOC investigation into disparate impact on the part of HISD could have grown out of Smith's EEOC charge. *Compare Pacheco*, 448 F.3d at 792 (holding that an EEOC charge that only "facially alleged disparate treatment; …identified no neutral employment policy; and…complained of past incidents of disparate treatment only" did not exhaust a disparate impact clam). Accordingly, Smith's Title VII disparate impact claim must be dismissed.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that HISD's Motion for Summary Judgment (Doc. 16) is **GRANTED** and Smith's claims of race discrimination, religious discrimination, retaliation, and disparate impact are **DISMISSED**.

Final judgment will be entered by separate document.

SIGNED at Houston, Texas, this 9th day of September, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE